# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL DOCKET NO.: 5:14CV75-RLV

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Memorandum and Order |
| ) | |
| $67,040.00, IN UNITED STATES ) | |
| CURRENCY, ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Motions to Dismiss filed by Claimants Steven Anthony Miller ("Miller") and George Bryan Bostwick ("Bostwick"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rules E(2) and G of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims. (Docs. 9−12). The Government filed its Answer / Response on August 1, 2014. (Doc. 13). There were no reply briefs filed.

## I.     Nature of Case

On May 20, 2014, the United States commenced this civil forfeiture action *in rem* pursuant to 18 U.S.C. §§ 981 and 983, 21 U.S.C. § 881, and 19 U.S.C. §§ 1602−1621 (to the extent applicable) by filing a Verified Complaint for Forfeiture *In Rem*. (Doc. 1). The defendant is "all present and future interest in the $67,040.00 in United States Currency." (Verified Complaint, ¶ 6). A warrant for arrest of the defendant property issued on May 30, 2014. (Doc. 3). The defendant property was seized and remains in the custody of a federal agency (United States Drug Enforcement Administration). (Verified Complaint, ¶ 7; Doc. 10 - Motion to Dismiss, 2).

The factual basis for seizure of the defendant property is set forth within the Verified Complaint, which alleges that on December 22, 2013, at approximately 1:42 a.m., Claimants

George Bryan Bostwick ("Bostwick") and Steven Anthony Miller ("Miller") were in a 2014 Chevrolet Traverse SUV ("Traverse"), Georgia tag CBG-3374, driven by Bostwick and traveling westbound at approximately 95 miles per hour in a 65 miles per hour zone on I-40 in Catawba County, North Carolina. (Verified Complaint, ¶¶ 8−12). North Carolina State Highway Patrol Trooper Joseph D. Connor ("Trooper Connor") initiated a traffic stop, at which time Bostwick represented that the Traverse was a rental vehicle but was unable to produce a rental agreement. (Verified Complaint, ¶¶ 12−13). Bostwick voluntarily represented that he and Miller were on their way to the Asheville airport to catch a flight because Miller had recently learned that his girlfriend was pregnant. (Verified Complaint, ¶ 18).

Trooper Connor investigated Bostwick's level of impairment after smelling alcohol and air freshener but determined that he was not legally impaired after performing field sobriety and alcohol sensor tests. (Verified Complaint, ¶¶ 14−17). Bostwick gave Trooper Connor verbal consent to search the car. (Verified Complaint, ¶ 19). Trooper Connor conducted a safety frisk on Miller and "a large wad of currency" estimated to be $800 was found in his pants pocket. (Verified Complaint, ¶ 21). A second patrolman, North Carolina State Highway Patrol Trooper Michael J. Goudelock, arrived on the scene around 2:19 a.m. to assist with the search. (Verified Complaint, ¶ 28).

During the course of the vehicle search, additional amounts of currency were discovered in various locations, including approximately $2,000 located under the lid of the center console, approximately $23,000 located in a brown book bag, and approximately $40,000 found within a vacuum sealed package encased by diapers and stored in a white Priority Mail box in the rear cargo area of the Traverse. (Verified Complaint, ¶¶ 25, 29−32, 36−43). The $40,000 was separated into four large bundles of currency and placed in a brown envelope within the vacuum

sealed package. (Verified Complaint, ¶¶ 39−40). In addition, each bundle of currency was vacuum sealed and had "10" written on top. (Verified Complaint, ¶¶ 40−41). A total of $67,040.00 was seized from the car in the following denominations: "213 hundred-dollar bills; 41 fifty-dollar bills; 2,178 twenty-dollar bills; 12 ten-dollar bills; and 2 five-dollar bills." (Verified Complaint, ¶¶ 44−45). Miller made a voluntary statement that the $23,000 was for a wedding he was traveling to in Asheville. (Verified Complaint, ¶ 32). The $40,000 was explained by Bostwick, who reported that he intended to use the money to purchase vehicles and return to North Carolina and sell the cars for profit. (Verified Complaint, ¶¶ 42−43). The $67,040 found within the Traverse was seized by the state troopers.

In addition, residue amounts of marijuana were observed in the carpet between the driver's seat and center console as well as inside a duffle bag retrieved from the rear cargo area of the Traverse. (Verified Complaint, ¶¶ 33−35). The Verified Complaint identifies two prior state felony drug convictions of the driver of the car, George Bryan Bostwick − a 2006 conviction for possession of Schedule II controlled substances in violation of N.C.G.S. § 90−95(a)(3) and felony possession of marijuana in violation of N.C.G.S. § 90−95(d)(4) in the North Carolina General Court of Justice, Carteret County Superior Court, and a 2011 conviction for possession with intent to sell and deliver a Schedule I controlled substance in violation of N.C.G.S. § 90−95(a)(1) in the North Carolina General Court of Justice, Pitt County Superior Court. (Verified Complaint, ¶¶ 46−47).

The said traffic stop on December 22, 2013, and subsequent vehicle search that resulted in seizure of the $67,040 did not result in a criminal conviction. Bostwick was cited for possession of drug paraphernalia in light of the blue duffle bag smelling of marijuana. However,

the citation against Bostwick was dismissed on March 6, 2014 by the Catawba County District Court. (Doc. 5 / Exh. A; Docs. 10, 2; 12, 2). Miller was not charged with any criminal offense.

According to the United States, seizure and forfeiture of the defendant property is legal in that the money constitutes "proceeds traceable to transactions and exchanges for controlled substances or listed chemicals in violation of Chapter 13, Drug Abuse Prevention and Control, of Title 21 of the United States Code, 801, *et seq*.; and was money . . . used or intended to be used, in any manner or part, to commit or to facilitate the commission of violations punishable by more than one year's imprisonment of Chapter 13, Drug Abuse Prevention and Control, of Title 21 of the United States Code, 801, *et seq*." (Verified Complaint, ¶ 48).

A Verified Claim contesting forfeiture was submitted on June 27, 2014 by Claimant Miller. (Doc. 5). Miller's claim alleges that his interest is $25,000 of the defendant property. Similarly, Claimant Bostwick filed a Verified Claim and Answer on July 1, 2014 and July 2, 2014. (Docs. 6, 7). Bostwick asserts that his interest is $42,000 of the defendant property. On July 17, 2014, Bostwick and Miller filed Motions to Dismiss alleging insufficiency of the pleadings.[1]

## II. Legal Standard

A motion filed pursuant to 12(b)(6) of the Federal Rules of Civil Procedure challenges the legal sufficiency of a complaint.[2] *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

---

[1] Claimants' filings contesting forfeiture are essentially identical and filed by the same lawyers, Attorneys James John Rainsford of Coleman, Gledhill, Hargrave, Merritt & Rainsford, P.C., Hillsborough, North Carolina, and W. Gene Sigmon of Sigmon, Sigmon, and Isenhower, Newton, North Carolina. Claimants advance a Fourth Amendment challenge concerning the vehicle search and assert that the verbal consent provided by Bostwick was invalid.

[2] Rule G(8)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions authorizes a claimant to move to dismiss a forfeiture complaint pursuant to Rule 12(b). *See* Fed. R. Civ. P. Suppl. R. G(8)(b).

In order to survive a Rule 12(b)(6) motion to dismiss, the facts alleged must be sufficient "to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Requiring plausibility "does not impose a probability requirement at the pleading stage." *Id.* at 556. It does, however, demand more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 662 (2009). Ultimately, a claim has facial plausibility when the plaintiff pleads factual content that permits the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

When ruling on a Rule 12(b)(6) motion, the Court accepts "as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the plaintiff." *Phillips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

In the context of an *in rem* forfeiture action, the government must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." *United States v. $40,000.00 in United States Currency*, 2010 WL 2330353, * 4 (W.D.N.C. May 11, 2010) (recommending denial of motion to dismiss complaint for lack of sufficiency; recommendation subsequently adopted by district court); *see also* 18 U.S.C. § 983(a)(3)(D)("No complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property.").

Concerning the legal standard applicable to Claimants' Motion to Dismiss, the following exposition is instructive:

> Prior to 2006, complaints in forfeiture actions were governed by Rule E(2)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims. Rule E(2)(a) provided then and provides now:

In actions to which this rule is applicable the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.

In 2006, these Rules were amended and renamed the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"). The 2006 Amendments added a new Rule G, supplanting Rule E(2)(a) and governing procedures in civil forfeiture actions. *See* Rule E of Supplemental Rules, advisory committee's note; Rule G of Supplemental Rules, advisory committee's note on 2006 adoption; *see also* 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3261 (2d ed. Supp. 2008).

Under Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, a complaint in an *in rem* forfeiture case must:
> (a) be verified;
> (b) state the grounds for subject-matter jurisdiction, *in rem* jurisdiction over the defendant property, and venue;
> (c) describe the property with reasonable particularity;
> (d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed;
> (e) identify the statute under which the forfeiture action is brought; and
> (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

Rule G(2) of Supplemental Rules. The Advisory Committee's Note clarifies that it adopts the standard that evolved in case law interpreting the earlier Rule E(2)(a) requirement and is intended to "carr[y] forward this forfeiture case law without change." Rule G of Supplemental Rules, advisory committee's note on 2006 adoption (citing *United States v. Mondragon*, 313 F.3d 862, 865 (4th Cir. 2002)).

*United States v. $40,000.00 in United States Currency*, 2010 WL 2330353, * 4 (quoting *United States v. All Assets Held at Bank Julius Baer & Company, Ltd.*, 571 F.Supp.2d 1, 15−16 (D.D.C. July 9, 2008)). Therefore, Rule G(2)(f) governs the pleading analysis rather than the old Rule E(2).

Although both the Federal Rules of Civil Procedure and the Supplemental Rules inform the Court's analysis, the Supplemental Rules trump in the event of an inconsistency. *See* Fed. R.

Civ. P. Suppl. R. A(2) (2006). Even so, because civil forfeiture *in rem* permits immediate seizure of property (before any pre-deprivation process or judicial review), the Supplemental Rules require more particularity than Rule 8(a)(2) of the Federal Rules of Civil Procedure, which only requires "a short and plain statement" of the claim. *See United States v. $40,000.00 in United States Currency*, 2010 WL 2330353, * 2. In light of this particularity requirement, the pleading standard under Supplemental Rule G(2)(f) is "more stringent than the general pleading requirements found in the Federal Rules of Civil Procedure." *United States v. $40,000.00 in United States Currency*, 2010 WL 2330353, * 2 (Rule 12(b)(6) standard has no substantive impact on the analysis of civil forfeiture actions *in rem* brought under the Supplemental Rules) (citing *United States v. $38,000.00 Dollars in U.S. Currency*, 816 F.2d 1538, n. 20 (11th Cir. 1987)); *see also United States v. $2,200,000 in United States Currency,* 2014 WL 1248663, * 6 (D.Md. March 26, 2014) ("pleading standard under Supplemental rule G(2)(f) is higher than the standard for Fed.R.Civ.P. 8(a) . . . .").

Ultimately, at trial, the Government's burden of proof is to show, by a preponderance of the evidence, that the defendant property is subject to forfeiture. *United States v. $40,000.00 in United States Currency*, 2010 WL 2330353, * 4 (citing 18 U.S.C. § 983(c)(1)). "The Government may rely on circumstantial evidence to establish forfeitability." *United States v. $2,200,000 in United States Currency,* 2014 WL 1248663, * 5 (D.Md. March 26, 2014) (quoting *United States v. Herder*, 594 F.3d 352, 364 (4th Cir. 2010)). Whether the Government meets its burden as to forfeiture depends upon the "totality of the circumstances." *See e.g., United States v. $63,289.00 in United States Currency*, 2014 WL 2968555, * 5 (W.D.N.C. July 1, 2014) (citing *United States v. Thomas*, 913 F.2d 1111, 1115 (4th Cir. 1990)). Assuming the Government is

able to meet its burden at trial, the burden of proof then shifts to Claimant to prove by a preponderance of the evidence that he is an "innocent owner." *See* 18 U.S.C. § 983(d)(1).

**III.     Discussion**

**A.  Adoption of New Policy by United States' Department of Justice**

The undersigned takes judicial notice of a recent policy change by the U.S. Department of Justice in the area of civil forfeiture. On January 16, 2015, U.S. Attorney General Eric Holder announced: "With this new policy, effective immediately, the Justice Department is taking an important step to prohibit federal agency adoptions of state and local seizures, except for public safety reasons . . . ." *See* http://www.justice.gov/opa/pr/attorney-general-pro," January 16, 2015. The term "adoption" refers to a federally adopted forfeiture, or a forfeiture that "occurs when a state or local law enforcement agency seizes property pursuant to state law and requests that a federal agency take the seized asset and forfeit it under federal law." Id.  According to the Office of Public Affairs, the DOJ prohibition on federal agency adoption "includes, but is not limited to, seizures by state or local law enforcement of vehicles, valuables, cash and other monetary instruments." Id.  The express policy objective is to "ensure that adoption is employed only to protect public safety, and does not extend to seizures where state and local jurisdictions can more appropriately act under their own laws." Id.  One notable exception is that the new policy does not apply to "seizures resulting from joint operations involving both federal and state authorities, or to seizures pursuant to warrants issued by federal courts." Id.  In other words, the practices of joint task forces will not be affected.  The U.S. Department of Treasury is taking similar steps and adopting the same policy for purposes of its forfeiture program.   Id.

While the January 16, 2015 Order applies prospectively only, it is noteworthy that the seizure of the defendant property here was a state law enforcement action resulting from the traffic

stop conducted by the North Carolina State Highway Patrol. Id. ("This order is effective January 16, 2015, and applies prospectively to all federal adoptions.") There is no allegation that Troopers Connor or Goudelock were working in cooperation with any federal authorities or in conjunction with a joint task force on December 22, 2013. The defendant property was eventually turned over to the United States Drug Enforcement Agency ("DEA") for purposes of forfeiture.[3] For these reasons, had this civil forfeiture *in rem* been initiated after January 16, 2015, it would possibly fall within the scope of the Attorney General's Order and would be to that extent potentially affected.[4]

**B. Analysis**

Considering the totality of the circumstances, and viewing the allegations presented in the light most favorable to the United States, the Government alleges with particularity facts which support a reasonable belief that the $67,040 constitutes proceeds of drug trafficking activity or was used or intended to be used to facilitate drug trafficking activity.[5] First, the amount of money seized, and the manner in which the money was packaged and strategically placed in different areas of the Traverse, suggests that illegal activity was afoot. *See e.g.*, *United States v. $116,850 in United States Currency*, 2014 WL 6686693, * 4 and n. 3 (D.S.C. November 25, 2014) ("A large sum of money, by itself, is insufficient to show a connection to drugs.")

---

[3] According to the Verified Claims of Bostwick and Miller, the "Adoption Date" (date the federal authorities adopted this forfeiture from the State of North Carolina) was January 15, 2014. (Docs. 5 and 6 at 1).

[4] The parties declined the opportunity to supplement their filings in response to the January 16, 2015 Order.

[5] "Defendant property is forfeitable because it was "facilitating" an illegal drug transaction when "there [is] a substantial connection between the property and the offense." *See United States v. $63,289 in United States Currency*, 2014 WL 2968555, * 5 (W.D.N.C. July 1, 2014) (quoting 18 U.S.C. § 983(c)(3)) (findings of fact and conclusions of law issued in Government's favor and forfeiting currency under facilitation and proceeds forfeiture theories). "Defendant property is proceeds of an illegal drug transaction, and therefore forfeitable, where the property was obtained, directly or indirectly, from the commission of an illegal transaction." *Id.* (citing 18 U.S.C. § 981(a)(2)(A)).

(internal citations omitted); *but see United States v. $63,289 in United States Currency*, 2014 WL 2968555, * 5 (W.D.N.C. July 1, 2014) ("Possession of a large amount of cash is strong evidence of a connection to drug activity because the common sense reality of everyday life is that [law abiding citizens do not transport large quantities of cash rubber-banded into bundles and stuff into [shopping bags].") (internal quotation marks and citations omitted). In *$116,850 in United States Currency*, the court denied the motion to dismiss where facts in the Verified Complaint alleged that the driver of the vehicle was nervous and sweating, the car was traveling on Interstate 95 (a known drug corridor), a disposable cell phone was discovered, there was an attempt to avoid a vehicle search, inconsistent statements were made regarding travel plans, a drug dog alerted to the odor of narcotics on the suitcase in the trunk that contained the seized currency, and the money was rubber-banded and in bundles, and the denominations of the currency was indicative of drug trafficking activity. *See $116,850 in United States Currency*, 2014 WL 6686693, * 4; *see also United States v. $17,550 in United States Currency*, 2013 WL 1681891 (E.D.Va. April 17, 2013) (denying motion to dismiss in part due to facts alleging large amounts of money with suspicious packaging).

Secondly, the Verified Complaint alleges marijuana residue was found in the carpet near the center console and in the blue duffle bag and Trooper Connor detected an odor of marijuana on the blue bag, all of which suggests that the illegal activity afoot could, in fact, be a violation of the federal drug laws. *See $40,000.00 in United States Currency*, 2010 WL 2330353, * 5 (denying motion to dismiss in part due to facts alleging law enforcement reported an odor of marijuana emanating from a rubberized bag and suitcase found in the back seat, and given large amount of currency divided into four bundles discovered in a paper bag within a suitcase); *see also $17,550 in United States Currency*, 2013 WL 1681891, ** 2−3 (denying motion to dismiss

10

in part given facts alleging presence of drug residue, large amounts of money with suspicious packaging found in unusual location, claimants were traveling from a known source state for drugs, and a drug dog alerted to the vehicle area where the cash was located and to the bag containing the currency).

Third, the inconsistent statements made by Bostwick and Miller concerning the purpose for their travel and their explanations as to why they elected to carry large amounts of cash undermine the Claimants' challenge to the sufficiency of the Verified Compliant. *See $40,000 in United States Currency*, 2010 WL 2330353, * 5; *see also $17,550 in United States Currency*, 2013 WL 1681891, * 2 (claimaint's explanation of travel's purpose, employment, and relationship with passenger discredited by passenger). "Inconsistent and implausible answers regarding travel plans and the source of the money further supports a link to illegal activity." *United States v. $105,180 in United States Currency*, 2013 WL 2153326, * 9 (D. Ariz. 2013) (forfeiture judgment entered).

Fourth, the Verified Complaint alleges that the center console panels appeared loose as if they had been tampered with, which suggests that the center console was used to hide controlled substances, money, or other tools of the drug trade. *See e.g.*, *$17,550 in United States Currency*, 2013 WL 1681891, * 2 (denying motion to dismiss in part due to facts alleged that "dash and interior trim of the vehicle was suspiciously loose, suggesting that drugs had been or could be stored in the vehicle's doors"). Another fact alleged within the Verified Complaint that tends to show an intent to conceal is use of air freshener, often part of an effort to mask the odor of illegal substances.

In conclusion, as more thoroughly detailed by the Government, specific factual allegations within the Verified Complaint concerning the evidence of illegal drugs, large

11

amounts of cash, cash in large amounts of small denominations, contradictory and implausible statements, prior drug convictions, and a hidden compartment collectively support a reasonable belief that the Government will be able to satisfy its burden at trial. (Government Response, 6−9). Viewing these alleged facts in the light most favorable to the Government, the Court finds that the Verified Complaint survives the Claimants' challenge.

Finally, Claimants contend that at the time of seizure, the currency was not subject to criminal forfeiture under North Carolina's forfeiture statute, N.C.G.S. § 90−112(a)(2). The Claimants' argument misses the mark as there was no forfeiture by the State of North Carolina. "In cases where a federal agency adopts the seizure of currency by local officials, "by reason of the adoption principle, the cash is *deemed to have been seized by the [federal] government and, thus, subject to federal jurisdiction as of . . . the date of seizure*."" *See e.g., North Carolina ex rel. Haywood v. Barrington*, 256 F.Supp.2d 452, 457 n. 3 (M.D.N.C. April 11, 2003) (emphasis in original) (internal citation omitted). Because the DEA adopted the seizure of the defendant property by the state troopers, the forfeiture that resulted in permanent deprivation of the money was the instant federal forfeiture. *See Haywood*, 256 F.Supp.2d at 460−61 (explaining roles of state and federal law enforcement in context of adoption forfeiture and impact on claimant's remedies after federal adoption). Therefore, federal forfeiture law controls.

In conclusion, despite Claimants' contention that dismissal is warranted, the Court finds that the Government's Verified Complaint alleges sufficient facts to support a reasonable belief that it can meet its burden at trial. *See* Fed. R. Civ. P. Suppl. R. G(2)(f).

## IV. Order

For the reasons stated herein, the Court <u>denies</u> Claimants' respective Motions to Dismiss.

**IT IS, THEREFORE, ORDERED** that Claimants' Motions to Dismiss (Docs. 9, 11) are hereby **DENIED**.

Signed: March 27, 2015

Richard L. Voorhees
United States District Judge